UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 22-cr-543-03 (CRC) |
| Loruhamah Yazdani-Isfehani, *defendant*. | ) | |

MOTION TO MODIFY CONDITION OF RELEASE

Defendant, through undersigned counsel Nathan I. Silver, II, Esq. ("counsel"), appointed by this Court under the Criminal Justice Act, respectfully moves the Court to modify the condition of release that restricts her ability to possess firearms during the pendency of this case. The reasons follow.

1. Defendant is charged in a four-count criminal information with misdemeanor offenses the government alleges she committed on January 6, 2021, at the United States Capitol. Those offenses are Entering and Remaining in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Restricted Building or Grounds; Disorderly Conduct in a Capitol Building; and Parading, Demonstrating, or Picketing in a Capitol Buildings, violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§5104(e)(2)(D) and (e)(2)(G), respectively. Defendant and her brother and sister are charged as codefendants with identical offenses.

2. Defendant appeared on March 1, 2022, for her initial appearance in the instant case before Mag. Judge Zia M. Faruqui.[1] Judge Faruqui was charged with determining, under 18 U.S. §3142(c)(1)(B)[2], "the *least restrictive* further condition, or combination of conditions, that…will reasonably assure the appearance of the person as required and the safety of any other person and

---

[1] The defendant had a Rule 5 hearing in the Southern District of Ohio before appearing here.

[2] Pretrial Services recommended, and the government did not oppose, the defendant's release with conditions.

the community, which may include the condition that the person…(k)(viii) refrain from possessing a firearm, destructive device or other dangerous weapon…" (italics added)

3. The D.C. Pretrial Services Agency ("PSA") recommended "General Supervision," including that "The Defendant is not to possess a firearm, destructive device, or other weapon." (PSA report, page 1)  Judge Faruqui followed its recommendation.  The actual "Order Setting Conditions of Release" prohibits the defendant from possessing "a firearm, destructive device, or other weapon." (ECF Doc. 16, ¶7(k), page 2)[3]

4.  Defendant was also ordered to "submit to supervision by and report for supervision to the Southern District of Ohio ("SDIL") (as directed)...." (Id., ¶7(a)

5.  It is counsel's understanding that PSA recommends a firearms prohibition uniformly for defendants in January 6 cases, many of whom reside elsewhere than in the D.C. metropolitan area.  They receive "courtesy supervision" by PSA (and in some cases U.S. Probation) officers in other districts.  The concern is that those officers who make home visits could be in peril by entering a residence where firearms are located.  There appears to be no other stated purpose for this restriction.

6. Defendant objected at her initial hearing to the request for the firearm restriction. Defendant represented, and reiterates herein, that she lives in a rural part of Ohio with her boyfriend, a police officer.  She has a concealed carry permit from the State of Ohio, which itself is an "open carry" state. (Exhibit attached)  Her boyfriend possesses a service weapon, which he keeps on his person, and other firearms, which he keeps locked in a gun safe to which the defendant has no access; the safe has a lock that can be opened only with a combination, which

---

[3] The defendant had previously been ordered at the Rule 5 hearing in Ohio to remove her firearm from her residence, which she did before her initial appearance in this case.

she does not have.[4] The defendant is not a prohibited person under federal or state firearms law, and the instant charges against her do not affect her retention of her concealed carry permit. Her principal purpose in having a firearm is for her own protection in the home, principally when her boyfriend is not present.[5]

7. Defendant adds that her boyfriend has two children, an eight-year old boy and an infant (fourteen month old) girl, from a prior relationship. They are regular overnight visitors in the home, so a secondary purpose for the firearm is to protect them when her boyfriend is not at home.[6]

8. Defendant moves the Court to lift the restriction on her possession of firearms. The Second Amendment to the Constitution, as interpreted by the U.S. Supreme Court in the case of *McDonald v. Chicago,* 561 U.S. 742 (2010), relying in part on *Heller v. District of Columbia,* 554 U.S. 570 (2008), assures a private person's right to possess firearms in states and localities. That right may, of course, be subject to reasonable restrictions.

9. Defendant contends that the restriction here is neither reasonable in or justified by these circumstances. Defendant does not present any factors that would suggest she's a danger to others. She has no criminal record; has immediate previous employment with the U.S. Postal

---

[4] Judge Faruqui ruled, after much discussion, that "All firearms located at the defendant's residence must be kept in a safe/lock box. Defendant may not have access to the firearm safe/lock box." (ECF Document No. 16, "Order Setting Conditions of Release," page 3) The firearms referred to belong to the defendant's boyfriend; they are his personal property, not service weapons. Judge Faruqui also ruled, though it is not reduced to writing in either the release order or in the docket entry, that the defendant may be with her boyfriend when he is armed with his service weapon, whether or not they are inside or outside of the residence. The Court rejected the government's initial request that the boyfriend keep his service weapon locked up when he and the defendant are inside the home.

[5] The defendant is permitted to be in the presence of her boyfriend when he himself is armed with his service weapon, whether or not they are at home or in the community.

[6] Counsel did not have this information at the time of the initial hearing, thus it was not presented to Judge Faruqui.

Service; and was vetted by Ohio authorities when she sought and received her concealed carry permit.[7] She is not a "prohibited person" under 18 U.S.C. §922(g) that would make her possession of firearms illegal.  Further, there's no evidence before the Court of a history of mental health problems, or alcohol or drug abuse..  The charges she faces in the instant case are all *non*-violent misdemeanors.  The allegations do not include either assaults against persons or the vandalizing or destruction of property.

      10. "The defendant must submit to supervision by and report for supervision to the Southern District of Ohio/Columbus as directed…."  The defendant lives in Logan, Ohio, about an hour's drive from the U.S. Courthouse in Columbus, the location of the Southern District. The stated need for the firearms restriction is so a pretrial services officer supervising the defendant would not be in peril if making a home visit. (*Supra,* ¶5)  Given the distance of the U.S. Courthouse from the defendant's residence, it is not likely that an officer would appear unannounced.[8]  There is no reason for concluding on these facts that a firearms restriction is necessary.

      11. Defendant adverts the Court to a recent Order from the Hon. Thomas F. Hogan, Senior Judge of this Court, in the case of *United States v. Tina Logsdon*, 22-cr-23-02 (TFH). Like the defendant, Mrs. Logsdon is charged with a family member, her husband; the two live together.  Mrs. Logsdon, also represented by undersigned counsel, moved the Court to lift the

---

[7] Indeed, the charges which have been lodged against the defendant would not prevent her from obtaining a concealed carry permit in Ohio were she applying for one today.

[8] Indeed, Pretrial Services Off. Frank Clardy of the SDOH visited the defendant on Friday, March 11, 2022, at her home. He contacted her beforehand to make sure she would be home and expect him.  He told the defendant she should report by phone on the fourth Monday of each month and that he does not anticipate the need to visit her again.  Counsel spoke with Off. Clardy by phone after he saw the defendant.

firearms restriction that was imposed at the initial hearing. (ECF Docket No. 17, Feb. 16, 2022) The facts of the Logsdon case were functionally identical to those here.[9] The government, though it asked for the firearms restriction at both the Rule 5 hearing in Ohio and at the initial appearance in D.C., chose *not* to oppose lifting of the restriction, so long as Mrs. Logsdon would still be prohibited from possessing "other weapons or destructive devices." Mrs. Logsdon agreed to that proviso. (ECF Docket No. 20, March 7, 2022) So, too, does the defendant herein. Judge Hogan, after reviewing the pleadings, granted Mrs. Logsdon's request to have the firearms restriction lifted. ("Minute Order," ECF Docket No. 21, March 9, 2022) Judge Hogan added the condition that when meeting with any Pretrial Services personnel, Mrs. Logsdon not possess a firearm.[10]

12. Defendant submits that a blanket application in the January 6 set of cases of the non-possession restriction violates a basic principle of our criminal justice system: to treat defendants, and their cases, individually. Our system is not designed to, nor should it, treat defendants in bulk, much less as fungible, without further discrimination. A restriction that infringes on a constitutional right should not be considered a "standard condition" of pretrial release[11], certainly not without an examination into both the need for the restriction and whether or not it is justified in the circumstances, taking into account the nature of the case along with the

---

[9] Mrs. Logsdon is a resident of Illinois, which has more restrictive firearms laws. To possess a firearm legally, one must obtain a Firearm Owner's Registration ID (a "FOID card"). It allows one only to possess the firearm within one's residence (and probably one's business) but not to carry it in public; for that, one would need a concealed carry permit. Illinois, unlike Ohio, is not an "open carry" state.

[10] *Sua sponte*, Judge Hogan has, after "consideration of the 3/9/2022 MINUTE ORDER and consultation with Pretrial Services," has entered a corollary minute Order that "Pretrial Services personnel are no longer required to conduct in-person home visits with defendants." Other conditions, Judge Hogan, remain in place. (ECF Docket entry (unnumbered), March 11, 2022)

[11]The firearms restriction herein is subsumed in the Minute Entry for March 1, 2022 (defendant's initial appearance) in the wording "Defendant placed on Standard Conditions of Release."

defendant's background.  It should also be pointed out that the defendant stands charged with these offenses but is presumed innocent unless and until proven guilty.

      13. The defendant through counsel has conferred with the government regarding the issue presented by Motion and provided a copy for its review.  The government, via asst. U.S. Attorney Brittany L. Reed, has advised counsel that the government will oppose

      14. For the reasons stated above, the defendant urges the Court to remove the restriction on the possession of firearms during the pendency of this case.

      A proposed Order is attached.

      WHEREFORE, the defendant respectfully moves the Court to grant said relief.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Brittany L. Reed, Esq., DOJ-USAO (District of Louisiana) , attorney of record for the United States, this 16th day of March, 2022.

/s/
_____

*Nathan I. Silver, II*