UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 21-cr-543-03 (CRC) |
| | ) | |
| Loruhamah Yazdani-Isfehani, *defendant*. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on November 10, 2022 at 11 o'clock a.m. when she appears in-person before the Court for her sentencing hearing.

1. The defendant was named on Feb. 18, 2022, in a criminal complaint issued by this Court in 22-mj-33 (ZMF) and arrested five days later in Ohio. She appeared initially on March 1, 2022, before Magistrate Zia M. Faruqui, when she was released on her own recognizance with conditions. (ECF Doc. 16, March 1, 2022) Since then, she has been in compliance with the terms Judge Faruqui imposed. In addition, on April 5, 2022, this Court lifted the restriction on her possession in the home of a firearm, leaving all other conditions intact, following the defendant's Motion to Modify to Modify Conditions of Release, which the government chose not to oppose. Throughout her period on release, she has remained in compliance, without incident.

2. The defendant stands charged, first in a criminal complaint, later in a criminal Information filed on March 3, 2022, with four misdemeanor offenses resulting from her involvement in the Capitol Hill protests of January 6, 2021: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and

Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating").

3. On July 28, 2022, per a Plea Agreement with the United States, the defendant entered a plea of guilty to Demonstrating, a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment. As a petty offense, the U.S. Sentencing Guidelines do not apply. (Presentence Investigation Report ("PSI"), page 13, ¶74)  The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol, repairs which were necessary after the riot.

4. Defendant and her counsel have reviewed the final PSI. Defendant objected to the characterization of the issue of permission to enter the Capitol, which appears at ¶23 in both the draft and final PSI. That objection was noted but the presentence report remains unchanged. (Final PSI, ECF Doc. 66, page 17)[1] The defendant and her counsel have also reviewed the government's sentencing memorandum (ECF Doc. 59, filed Nov. 1, 2022) and the U.S.

---

[1] The defendant registers an objection to the Sentencing Recommendation submitted by the U.S. Probation Office. It states that its recommendation of 36 months of probation is based in part on the defendant's entry  "on January 6, 2021 (of) the U.S. Capitol building *knowing* that she did not have permission to enter the building." (italics added) (Doc. 67, page 2)   That is not what the Statement of Offense says, nor did the defendant concede that point to either the Court during the plea hearing or to U.S. Probation Officer Robert Walters during the presentence investigation interview.  The Statement of Offense states merely, "...the defendant entered the Capitol without permission to do so." (Doc. 50, pp. 3-4) As a factual matter, that is correct.  But the defendant entered without knowing that she *didn't* have permission.  Her contention is that the officers who waved her into the building made her think she was allowed to enter.  In fact, the officers themselves did not have the authority to let in unauthorized persons, so the defendant was not legally on the premises. She would, though, have a defense to the offense to Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1) ("knowingly enter(ing) or remain(ing) in any restricted building or grounds without lawful authority to do so….") but not to the charge of Demonstrating.  Indeed, the original Statement of Offense included as an element of the offense knowing entry without permission. That language was removed during plea negotiations and instead a statement about the fact of impermissible entry was added to the description of her conduct.

Probation Office's Sentencing Recommendation (ECF Doc. 67, filed Nov. 2, 2022). The government recommends a split sentence of thirty (30) days incarceration, thirty-six (36) months probation, sixty (60) hours of community service, and $500 in restitution. (Doc. 59, page 1) The probation office recommends a period of three (3) years probation; one hundred (100) hours of community service; no term of custody or incarceration; $500.00 (five-hundred dollars), and a $10 special assessment (Doc. 67, page 2) Noting that the defendant was permitted while on release to possess a firearm in the home, and remained in compliance with the Court's modification, it nonetheless recommends that she be prohibited while on probation from doing so. (Id.)

      5.  While in the Capitol or on its grounds, the defendant did not commit any violent or destructive act, either to persons or property.  Nor did she encourage her codefendants, sister Abigail or brother Loammi, or others, to do so. (PSI, "Role Assessment," page 7, ¶27). reports the defendant as being inside the Capitol for approximately 37 minutes, from roughly 2:37 to 3:14 p.m. (Id., ¶¶23-24)

      6. The defendant has no criminal record of any kind, adult, juvenile or traffic. (Id., ¶¶32, 33 and 35)

      7. The defendant has reviewed with her counsel the Government's Sentencing Memorandum (Doc. 59) ("GSM").  She believes it  presents her conduct in a light more unfavorable than the facts warrant.  She also disputes that her conduct to date shows her not to be remorseful for her actions. (Id., page 23)

      8. The defendant takes issue with the following assertions or implications in the GSM:

      a. The defendant was not aware that "police officers were deploying control devices to stop the rioters from attempting to break through the line of officers….*See* Image 1." nor was she aware of what devices were being used. (page 4)

      b. The defendant did not see rioters assaulting officers, even though "Loruhamah was also captured in the crowd as rioters assaulted officers on the Lower West Plaza. *See* Image 3, below." (page 5)

      c. The police weren't blocking doors or the defendant herself as she entered the building, even if "Loruhamah and (siblings) entered the Capitol…within minutes of the breach, at a point when the officers guarding the doorway were overwhelmed by the rioters." (page 7) An officer told her, "I personally don't agree with it, but you're allowed to go in and just be peaceful." The defendant maintains that, had been told or ordered not to enter, she would have obeyed the officer.

      d. The defendant did not hear an officer "telling a reporter who was entering, 'No you can't come in. Nobody can come in.'" (page 8)

      e. Soon after Ashli Babbitt was shot, the defendant saw the police running, wondering why they were doing so. Since they ran past her, and made no effort to have her leave the building, she did not believe that she was not allowed to remain in the building, contrary to the assertion that "despite seeing the presence of police officers responding to an unknown threat, eventually determined to be the shooting of Ashli Babbitt, Loruhamah did not leave the building." (pages 9, 20-21)  "Eventually" is the key word in that sentence; that terrible event was not known to the defendant, nor to many others in the building at that time.

      f. The defendant was aware of tear gas that formed a cloud in one of the hallways – she's unsure which one – but it was not deployed directly at her or those near her. (page 10)  Not long after this, perhaps two to three minutes later, Abigail approached the defendant, followed by an officer. He told the, "You need to leave or else you'll be arrested for trespassing." Abigail said, "I didn't know you could be charged with trespassing in a federal building," and the defendant agreed, "I don't know how we can be charged when we were let in." The officer insisted, "You need to leave," and they tried to do so. But they couldn't leave through the door at which the officer directed them, so they had to find another exit.  It is *not* true that "Loruhamah ignored the officers' commands and remained inside the building." (page 13)

      g. The defendant remembers that she and her siblings followed others who were leaving, or trying to leave, the building. But she does not remember hearing "an officer telling rioters that they needed to exit the building." (page 14) By this point, the three were determined to leave because they did not want to be charged with trespass, as they had been warned could happen.

    h. The defendant remembers that she and her siblings were unable to leave through the door of the Rotunda, so they had to find another exit. They did not tarry in doing so. (*See* GSM account, page 15)

    i. GSM at page 16 says, "Loruhamah and her siblings watched as the rioters flooded the doorway." The defendant say people ahead of her, desperate to leave, as word was circulating that the police would use tear gas on the crowd.  But the siblings made no effort to stall and remain in the building.

    j. It was on leaving the building, the defendant told the FBI, not on entering it, that she heard that "Vice President Mike Pence 'had voted against a vote recount…saw small skirmishes…and observed a gallows on the…Grounds of the Capitol Building." ("Loruhamah's FBI Interview", page 17)

    k. The defendant was concerned that her brother Loammi would post photos and videos on social media, but she knew or believed he had taken them only on the approach to the Capitol, not of of events immediately outside or inside the building. (page 18)

    l. The defendant contends that the GSM assumes her knowledge of improper conduct by others in such statements as ("As they entered the Capitol, they *very likely* crossed through numerous barriers and barricades and heard the violent outcries of a mob." and "While Loruhamah entered the building, she *would've heard* alarms blaring inside, signaling the Capitol had been breached…" (italics added) (pages 19-20)  In fact, these conditions were not apparent to her.

    9. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the

defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

    10.  The defendant stands before the Court with an unblemished record–no criminal record, adult or juvenile, not even traffic infractions, and no history of drug or alcohol abuse.  She presents as a decent, good-hearted, giving individual, one who feels a sense of responsibility to others.  The Court can see from her considerable employment history that she has worked hard in life.  Her efforts to complete her college education have been stalled, but she hopes not thwarted,  by a lack of funds and an earlier illness of her mother, one the defendant helped her mother through.  It is the Court's job to impose punishment, and it strikes one as presumptuous to say that a defendant, before sentencing, 'has been punished enough."  But the Court must know that in many a case, a mere arrest can adversely affect a defendant.  The opprobrium that has greeted persons arrested for January 6 offenses affected the defendant, too:  She was initially laid off from her job with the U.S. Postal Service, a job to which she was later reinstated, when she was charged only with non-violent misdemeanors; so much for the presumption of innocence how we citizens are supposed to view those charged with crimes.  That produced a period of uncertainty and anxiety in her life.  It was fear of an outsized reaction from others critical of the event that motivated the removal of the storage disk from her brother's Go-Pro; it was not a concern about being arrested, or any attempt to destroy evidence of a crime, but rather to avoid the disdain of those who know her..

    11. A period of probation, in lieu of incarceration, would satisfy the "need for the sentence…to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense."  During this time, the defendant would be answerable to the U.S.

Probation Office. She would be subject to the jurisdiction of the Court, knowing that any infraction could lead to revocation of the probationary term, with incarceration to follow. Such a term would at the same time provide deterrence specific to the defendant, operating as a disincentive to further criminal behavior.

12. A term of probation would also deter generally. The public is aware, from the comprehensive coverage of the January 6 events and the arrests that followed, of the serious efforts the government has made to prosecute persons involved with the protests and, in many cases, the violence that was perpetrated. These cases, from beginning to end, have been watched very closely by the press where defendants live, so the public will be aware of the defendant's responsibility for his conduct. That can serve to deter others in the future in similar situations.

10. The defendant submits that a probationary term would satisfy the various §3553 factors. The Court may also impose, and the defendant is amenable to a requirement of community service. Last, in the event that this Court believes that incarceration, not probation, is appropriate, the defendant requests that the Court permit her to serve her time in home confinement, with an exception for employment outside the home.

11. Last, the defendant requests that, for the reasons stated in her Motion to Modify Conditions of Release (Doc. 36, filed March 16, 2022), a motion which the government agreed not to oppose, so long as certain conditions were in place, she be permitted to possess a firearm during any period of probation that the Court chooses to impose.

For all the reasons noted above, the defendant respectfully requests a sentence of probation..

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Brittan Reed, , Esq., USAO-U.S. Attorney's Office (District of Louisiana) this 3rd day of November, 2022.

/s/
_____
*Nathan I. Silver, II*